# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Ryan Moore and Amanda Moore,

<table>
<tr><td>Plaintiffs,</td><td>Case No. 25-cv-12118</td></tr>
<tr><td>v.</td><td>Judith E. Levy<br>United States District Judge</td></tr>
<tr><td>Corrigan Moving and Storage Co.<br>and United Van Lines, LLC,</td><td>Mag. Judge Curtis Ivy, Jr.</td></tr>
<tr><td>Defendants.</td><td></td></tr>
</table>

_____/

## OPINION AND ORDER OVERRULING DEFENDANTS' OBJECTIONS [34] AND ADOPTING THE MAGISTRATE JUDGE'S RECOMMENDATION [30] TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION FOR REMAND AND FOR FEES AND COSTS [13] AND TO DENY WITHOUT PREJUDICE DEFENDANTS' MOTION TO DISMISS [23]

On May 28, 2025, Plaintiffs Ryan Moore and Amanda Moore commenced an action styled *Moore et al. v. Corrigan Moving and Storage Co. et al.* (Case No. 2025-215124-CZ) in the Sixth Judicial Circuit Court in Oakland County, Michigan. (*See* ECF No. 1-2.) Plaintiffs allege that Defendants United Van Lines, LLC and Corrigan Moving and Storage Co. failed to properly screen and supervise the people they hired to help move Plaintiffs' household possessions from Michigan to North Carolina.

(*See generally* ECF No. 18.) Plaintiffs assert two claims against Defendants: a claim that Defendants were negligent as a matter of Michigan state law and a claim that Defendants violated the Michigan Consumer Protection Act (MCPA). (*See id.* at PageID.244–247.)

Defendants removed the case to this Court. (*See* ECF No. 1.) Their Notice asserts that Plaintiffs' claims are preempted by federal law governing interstate transport and thus raise a federal question under 28 U.S.C. § 1331. (*See id.* at PageID.2–4.) Defendants also assert that diversity jurisdiction exists under 28 U.S.C. § 1332 because Corrigan (a citizen of Michigan) has no legal duty to Plaintiffs and thus should not be a party to this lawsuit. (*See id.* at PageID.4–5.)

Plaintiffs moved to remand this case to state court and to be awarded the fees and costs they incurred in seeking remand. (ECF No. 13.) This motion is fully briefed. (ECF Nos. 20, 21.) Defendants separately moved to dismiss Plaintiffs' Second Amended Complaint under Rule 12(b)(6). (ECF No. 23.) The motion to dismiss is also fully briefed. (*See* ECF Nos. 26, 27.)

The Court referred these motions to Magistrate Judge Curtis Ivy, Jr. for a Report and Recommendation ("R&R"). (*See* ECF Nos. 15, 24.)

2

Judge Ivy issued an R&R on February 27, 2026. (ECF No. 30.) The R&R recommends granting Plaintiffs' motion to remand (ECF No. 13) to the extent Plaintiffs seek to have their case returned to state court but it declines to award fees and costs. (*See* ECF No. 30, PageID.492.) In keeping with this recommendation, Judge Ivy also recommended denying Defendants' motion to dismiss under Rule 12(b)(6) (ECF No. 23) without prejudice so that the motion could be considered for the first time by the state court. (*See* ECF No. 30, PageID.492.)

Defendants filed five objections to the R&R on March 27, 2026.[1] (ECF No. 34.) Plaintiffs filed a response and Defendants filed a reply. (ECF Nos. 35, 36.)

For the reasons set forth below, Defendants' objections (ECF No. 34) are OVERRULED. The Court ADOPTS Judge Ivy's recommendation that this case be remanded to state court, that Plaintiffs' request for fees and costs be denied, and that Defendants' motion to dismiss for failure to state a claim be denied without prejudice. (*See* ECF No. 30.)

---

[1] On March 12, 2026, the Court granted Defendants' motion (ECF No. 31) to extend the deadline to raise objections from March 13, 2026, to March 27, 2026.

3

## I.    Background

The thorough background set forth in the R&R (*see* ECF No. 30, PageID.445–453) is fully adopted as though set forth in this Opinion and Order. The Court supplements that background as follows:

Plaintiffs allege that they hired Defendant Corrigan Moving and Storage Co. to help transport their household property from their former residence in Bloomfield Hills, Michigan to their new residence in Asheville, North Carolina. Corrigan was allegedly acting as the agent for Defendant United Van Lines, LLC ("UVL").

On the morning of the move (June 14, 2023), the "lead driver" of UVL's moving van allegedly advised Plaintiffs to "pack and move items of special and significant value themselves and to place those items in their personal vehicles." (ECF No. 18, PageID.237, ¶ 16.) Plaintiffs allege that this advice was given "because those items were specifically excluded from, and not any part of, the moving project." (*Id.*) Based on this advice, Plaintiffs claim that they packed "cash in a briefcase" that they "placed next to one of their personal vehicles." (*Id.* at PageID.238,

¶ 17.) They also claim to have packed a "coin collection in several boxes that they placed inside one of their personal vehicles." (*Id.*)[2]

Plaintiffs later discovered that the cash and one of the boxes containing coins were missing. (*Id.* at PageID.239, ¶ 22.)[3] They also learned that two workers who had been hired by Defendants to assist with the move had left the premises mid-day and had not returned. (*Id.* at PageID.239, ¶ 24.)

When reporting the theft to police, Plaintiffs claimed to have lost $40,000 in U.S. currency and $120,000 worth of coins and precious metals. (ECF No. 12-1, PageID.158–159.) However, Plaintiffs' attorneys later advised Defendants that, based on additional research and analysis, Plaintiffs believe property that was allegedly taken from their premises was worth about $9.4 million. (*See* ECF No. 1-5, PageID.40.)

---

[2] According to the police report regarding this incident, a "leather zippered briefcase" containing "$40,000 in US currency" was "left in the driveway next to [Mr. Moore's vehicle] unsecured." (ECF No. 12-1, PageID.160.) A banker's box containing old and valuable coins and bars of silver was left behind the driver's seat of the same vehicle, and this vehicle was "left unlocked." (*Id.*)

[3] According to his statement in the police report, Mr. Moore left the residence to go to the bank "at approximately 12:45" and discovered that certain items were missing after he "returned home at 15:15." (ECF No. 12-1, PageID.160.)

As part of the parties' shipping contract (which is memorialized in a bill of lading), Plaintiffs opted for Full (Replacement) Value Protection for the articles they intended Defendants to transport to North Carolina. (ECF No. 1-4, PageID.34.) Under this option, the mover was obligated to repair, replace, or pay the replacement value of any "article" that was "lost, destroyed or damaged while in your mover's custody." (*Id.*)[4] The mover's liability under this option is capped at the total replacement value of the shipment. (*Id.*) Plaintiffs declared the total value of their shipment to be $110,000. (*Id.*)[5] It is unclear from the current record whether Plaintiffs provided this valuation before or after they allegedly decided to exclude certain items (including a coin collection and $40,000 in currency) from the property that would be loaded and transported by the movers. To the extent the valuation was provided in advance,

---

[4] The bill of lading advises that the quoted cost of Plaintiffs' move ($14,874.08) was calculated using a "base rate plus an added cost reflecting the cost of providing [this] full value cargo liability protection." (*Id.*)

[5] The bill of lading also asks the customer to "acknowledge that [they] have prepared and retained a copy of the 'Inventory of Items Valued in Excess of $100 Per Pound per Article' that are included in [the] shipment." (*Id.*) Neither party states whether such an inventory was prepared by Plaintiffs. According to the bill of lading, a mover's liability is capped at $100 per pound for any lost or damaged article that does not appear on such an inventory. (*Id.*)

Plaintiffs did not avail themselves of the opportunity to change the declared value of their shipment to reflect the removal of these items. (*See id.* at PageID.35.)

## II. Legal Standard

### A. Objections to an R&R

A party may object to a magistrate judge's report and recommendation, and a district judge must resolve proper objections under a de novo standard of review. *See* 28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b)(1)–(3). "For an objection to be proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires parties to 'specify the part of the order, proposed findings, recommendations, or report to which [the party] objects' and to 'state the basis for the objection.'" *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018). Objections that restate arguments already presented to the magistrate judge are improper, *see Coleman-Bey v. Bouchard*, 287 F. App'x 420, 422 (6th Cir. 2008) (citing *Brumley v. Wingard*, 269 F.3d 629, 647 (6th Cir. 2001)), as are those that are vague and dispute the general correctness of the R&R, *see Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Moreover, objections must be clear so that the district court can "discern those issues that are dispositive and contentious." *Id.* (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (explaining that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). In sum, the objections must be clear and specific enough to permit the Court to squarely address them on the merits. *See Pearce*, 893 F.3d at 346.

"Parties cannot 'raise at the district court stage new arguments or issues that were not presented' before the magistrate judge's final R&R." *Meddaugh v. Gateway Fin. Serv.*, 601 F. Supp. 3d 210, 213 (E.D. Mich. 2022) (quoting *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)); *see also Little v. Williams*, No. 22-12222, 2025 WL 2544002, at *6 (E.D. Mich. Sept. 4, 2025) ("The general rule is that district judges will not entertain issues and arguments that appear for the first time in objections to a magistrate judge's report and recommendation." (collecting cases)); *Daniel v. Fighter-Daniel*, No. 24-cv-11218, 2025 WL 1879874, at *2 (E.D. Mich. July 8, 2025) ("Because these matters were

8

never presented before the magistrate judge, they are not considered here." (internal citation omitted)).

## B.    Motions to Remand and Federal Jurisdiction

The Court agrees with and adopts the R&R's articulation of the standard applied to a motion to remand a case to state court (*see* ECF No. 30, PageID.453–454); the standard for establishing federal-question jurisdiction under 28 U.S.C. § 1331, including through federal preemption (*see id.* at PageID.455–457); the standard for establishing diversity jurisdiction under 28 U.S.C. § 1332 (*see id.* at PageID.475–477); and the standard for establishing that a defendant was fraudulently joined to defeat diversity jurisdiction (*see id.* at PageID.477–478).

## III.   Analysis

As noted, the R&R recommends that Plaintiffs' motion to remand and for fees and costs (ECF No. 13) be granted to the extent that Plaintiffs seek a remand to state court but denied with respect to Plaintiffs' request for fees and costs. (*See* ECF No. 30.) Defendants raise five objections to the R&R. (ECF No. 34.) The Court addresses each objection below. The Court finds that the objections fail.

## A.   Objection Nos. 1 & 2: Federal Preemption Analysis

Defendants' first two objections concern Judge Ivy's conclusion that the Court lacks federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' state-law claims are not preempted by the federal Carmack Amendment. (*See* ECF No. 34, PageID.532–546.) Objection No. 1 argues that the R&R's preemption analysis is generally erroneous and unsupported by the text of the federal statute or by relevant case law. (*See id.* at PageID.532–541.) Objection No. 2 argues that the R&R fails to follow "controlling Sixth Circuit precedents on Carmack preemption." (*See id.* at PageID.541–546.) Given the overlap between these objections, the Court will address them jointly.

### i.   Judge Ivy's Analysis of the Carmack Amendment

Following a lengthy and thorough analysis, the R&R concludes that Plaintiffs' claims are not preempted by the federal Carmack Amendment to the interstate transportation statute (the ICCTA), as codified at 49 U.S.C. § 14706. (*See* ECF No. 30, PageID.457–475.)

The Carmack Amendment limits the liability of carriers that provide "transportation or service subject to jurisdiction under subchapter I or III of chapter 135" of title 49 of the United States Code.

10

49 U.S.C. § 14706(a)(1). The statute makes such carriers liable for "actual loss or injury to the property" that is "caused" by any carrier in the chain of custody. *Id.* The term "transportation" is defined in relevant part in the ICCTA to "include[] . . . services related to [the] movement [of passengers or property], including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." 49 U.S.C. § 13102(23)(b). The Carmack Amendment states that a carrier "shall issue a receipt or bill of lading for property it receives for transportation under this part." *Id.* § 14706(a)(1). The issuing carrier along with any other carrier involved in transporting the property is then liable to "the person entitled to recover under the receipt or bill of lading." *Id.* However, "[f]ailure to issue a receipt or bill of lading does not affect the liability of the carrier." *Id.*

Congress intended the Carmack Amendment to "supersede[] all of the regulations and policies" of the states concerning the scope of liability for companies engaged in the interstate shipment of goods. *Adams Express Co. v. Croninger*, 226 U.S. 491, 505 (1913). The Supreme Court has long held that "the words of the statute are comprehensive enough to

11

embrace responsibility for all losses arising from any failure to discharge a carrier's duty as to any part of the agreed transportation . . . ." *Ga., Fla. & Ala. Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 196 (1916).

As the R&R correctly observes, the United States Court of Appeals for the Sixth Circuit has "endorsed [a] maximalist understanding of the Carmack Amendment's preemptive scope." (ECF No. 30, PageID.462.) The Amendment preempts any claim in which "damages are sought against a common carrier for failure to properly perform, or for negligent performance of, an interstate contract of carriage." (*Id.* (quoting *Am. Synthetic Rubber Corp. v. Louisville & Nashville R.R. Co.*, 422 F.2d 462, 466 (6th Cir. 1970)).) That said, "a carrier may still be liable under state law for separate and independently actionable harms that are distinct from the loss or damage to the goods." (*Id.* at PageID.465–466 (quoting *United Rd. Logistics LLC v. Alpha Transp. Grp. LLC*, No. 16-12128, 2017 WL 5709589, at *2 (E.D. Mich. Mar. 22, 2017)).)

In analyzing Defendants' arguments that the Carmack Amendment preempts Plaintiffs' claims, Judge Ivy determined and found it dispositive that the allegedly stolen items were "excluded" from the interstate transportation contract (i.e., bill of lading) governing the move

12

because Plaintiffs decided to transport these items themselves. (*Id.* at PageID.466–475.) Judge Ivy found it insufficient that the items were allegedly stolen while Defendants were providing "transportation" services within the meaning of the Carmack Amendment, in that the items were allegedly taken by two individuals who were assisting with packing and loading the items that Plaintiffs tendered to Defendants to be moved interstate. (*See id.* at PageID.471.) The R&R also found it insufficient that Plaintiffs allegedly acted on advice from the driver of the UVL moving van when they elected to exclude these items from the shipment. (*See id.* at PageID.474–475.) Judge Ivy concluded: "Put simply, because Plaintiffs' claims for damages do not arise from the interstate contract of carriage that governed the moving project, complete preemption under the Carmack Amendment does not apply." (*Id.* at PageID.473–474.)

ii.   Cases Addressing Non-Transported Property

In objecting to Judge Ivy's preemption analysis, Defendants first argue that the R&R "erroneously focuses on which of plaintiffs' goods were allegedly intended to be shipped under [the] Bill of Lading . . . instead of defendants' contractual conduct and 'services' related to the

13

'transportation' including the hiring and supervision of the movers." (ECF No. 34, PageID.534 (emphasis omitted).) Defendants, in other words, contend that the Carmack Amendment preempts *any* claim that arises while the carrier provides services related to the "transportation" of the plaintiffs' household goods, regardless of whether the claim ultimately involves goods that were transported (or slated for transport at one time) under an interstate bill of lading.

Defendants' argument is not borne out in the case law. Courts regularly hold that the Carmack Amendment does not cover claims against a carrier arising from the loss of (including theft) or damage to property that was not slated to be transported or was not actually transported. Indeed, as set forth below, every court (but one) to address this issue has held that the Carmack Amendment does not preempt state-law claims arising from the loss of or damage to non-transported property that occurred while a carrier was transporting other items belonging to the plaintiff.

At least two courts have specifically addressed whether the Carmack Amendment preempts claims based on the alleged theft of non-transported items. In one such case (which is discussed in the R&R at

14

ECF No. 30, PageID.472–473), the court held that Carmack preemption did not apply to state-law claims arising from the alleged theft of the plaintiffs' jewelry while movers were delivering other property to the plaintiffs' home. *See Silvestri v. Bekins Van Lines, Inc.*, No. CV 19-08229-CJC(AFMx), 2019 WL 5538205, at *1–3 (C.D. Cal. Oct. 24, 2019). The claims that were found to be preempted included (1) an alleged violation of the California Consumer Legal Remedies Act, (2) false advertising, (3) unfair business practices, and (4) negligence, including negligent hiring. *See id.* at *1. The court explained: "Although a shipping contract between the parties existed, [the plaintiffs'] claims do not arise from any alleged breach of that contract." *Id.* at *3. The court also noted the absence of authority supporting the preemption of claims involving non-transported goods and "decline[d] to take the first step in expanding the scope of Carmack Amendment preemption, especially in a posture where 'federal jurisdiction must be rejected if there is any doubt as to the right of removal.'" *Id.* (citation omitted).[6]

---

[6] Defendants argue that *Silvestri* is not persuasive because, among other reasons, it did not specifically consider the arguments Defendants raise here or certain cases on which Defendants rely. (*See* ECF No. 34, PageID.544–545.) The Court agrees that *Silvestri* did not address all of the cases and arguments on which

15

Similarly, in a case that was relied upon by Defendants (*see* ECF No. 20, PageID.276), the plaintiff asserted two state-law conversion claims: one for property that was allegedly lost or stolen while it was being moved from the plaintiff's Virginia residence to her home in Washington, D.C., and another for cash and a diamond ring that were stolen from her Washington, D.C. residence while movers were on the premises to deliver her transported items. *See Brentzel v. Fairfax Transfer & Storage, Inc.*, No. 1:20-cv-1076, 2020 WL 12437871, at *1 (E.D. Va. Dec. 10, 2010), *aff'd*, No. 21-1025, 2021 WL 6138286 (4th Cir. Dec. 29, 2021). The court found it "clear" that the Carmack Amendment preempted the claim that goods were lost or stolen while being transported by the carrier. *Id.* at *3. As to the claim based on non-transported property, the court observed: "Because the property at issue . . . was always part of the Washington D.C. Residence, [the carrier's counsel] clarified at oral argument that [the carrier] does not seek

---

Defendants rely but nevertheless finds it provides a helpful analysis among numerous cases that reach similar results.

dismissal based on preemption [and instead] seeks dismissal for want of [federal] jurisdiction." *Id.*[7]

Courts have similarly declined to hold that the Carmack Amendment preempts claims that movers damaged non-transported property while packing, loading, and/or delivering transported property. A court in the Sixth Circuit recently held that the Carmack Amendment did not preempt a state-law negligence claim against a carrier whose employees "back[ed] a moving truck into a centuries old tree at [the plaintiff's] new house in Boston, Massachusetts." *See McCarthy v. Krupp Moving & Storage II, LLC*, No. 1:24-cv-79, 2024 WL 3413255, at *5 (S.D. Ohio July 15, 2024). The harm occurred while movers were providing "transportation" services pursuant to a bill of lading, but the property that was damaged was not the subject of the parties' transportation

---

[7] The plaintiff in *Brentzel* appealed the dismissal of her complaint. On appeal, the Fourth Circuit acknowledged but did not otherwise address the district court's dismissal of the claim based on non-transported property for lack of jurisdiction. *See* 2021 WL 6138286, at *2. It did, however, affirm that the Carmack Amendment preempted the plaintiff's "conversion claim seeking damages for the harm to and destruction of her property *shipped by*" the carrier. *Id.* at *5 (emphasis added). Defendants' briefing regarding *Brentzel* omits that nuance and thus erroneously suggests that the Fourth Circuit found that the Carmack Amendment preempted the claim for conversion of *non-transported* goods. (*See* ECF No. 20, PageID.276.) The R&R also overstates the scope of the Fourth Circuit's decision. (*See* ECF No. 30, PageID.470–471.)

contract. The court concluded that, "[i]n the absence of guidance from the Sixth Circuit, the Court is persuaded that the damage to the tree is sufficiently separate from the regulation of the interstate shipment of goods that it falls outside the zone of preemption." *Id.*

Other courts have reached similar conclusions in other cases involving damage to non-transported property. One court held that the Carmack Amendment did not preempt a state-law claim that a carrier negligently damaged the plaintiff's real property when delivering goods to that property during an interstate move. *Rehm v. Balt. Storage Co.*, 300 F. Supp. 2d 408, 415–16 (W.D. Va. 2004). The court noted the absence of "evidence that Congress has sought to extend the reach of the Carmack Amendment to real property damage incidental to the transportation service." *Id.* at 415. The court found it "overly simplistic to state tha[t] any event that merely touches upon interstate transportation of goods is covered by the Carmack Amendment." *Id.* at 416. Another court observed that the "Carmack Amendment does not bar claims involving damage to persons or property that arise outside of the carrier's contractual duty to the shipper" and thus concluded that the statute did not preempt a claim that a carrier's employees negligently damaged the "hardwood floors,

18

walls and door frames" of the plaintiff's home during an interstate move. *Brudnak v. A.A. Moving & Storage, Inc.*, No. 14-cv-6964 (WHW) (CLW), 2015 WL 1310292, at *4 (D.N.J. Mar. 24, 2015). Yet another court found "no indication that the [Carmack] Amendment was meant to preempt claims based on damages aside from those to the 'goods' shipped in interstate commerce" and thus concluded that alleged "damage to [the plaintiff's] home and non-shipped goods due to the alleged negligence of [the carrier's] employees is not preempted by the Carmack Amendment." *Gale v. Ramar Moving Sys.*, Civ. No. CCB-13-487, 2013 WL 3776983, at *2–3 (D. Md. July 16, 2013).[8]

---

[8] The Court located only one decision that supports Defendants on this point (although it was not cited in their briefing): *Raineri v. North American Van Lines, Inc.*, 906 F. Supp. 2d 334 (D.N.J. 2012). The plaintiff in *Raineri* claimed that movers damaged some of the items she had contracted to have transported to her new residence and separately claimed that the movers "caused damage to her Freehold, New Jersey property." *Id.* at 335. As to the latter claim, the plaintiff alleged that she was required to give the purchasers of her property $6,000 "as a result of the damages that the movers allegedly caused to and the delay of the sale of that property." *Id.* at 336. The court concluded that the claim was preempted because it "relates to losses resulting from [the moving company's] failure to properly discharge its duties under some part—any part—of the parties' contract." *Id.* at 340.

The Court is not aware of any decision that follows *Raineri* on this point. *McCarthy* (discussed above) acknowledged *Raineri* but ultimately concluded that, "in the absence of guidance from the Sixth Circuit," a claim for harm to a tree was "sufficiently separate from the regulation of the interstate shipment of goods that it falls outside the zone of preemption." 2024 WL 3413255, at *5. Another court observed

The Court finds these decisions persuasive and agrees with these courts (and Judge Ivy's recommendation) that the Carmack Amendment does not preempt claims based on loss of or harm to non-transported property that occurs while a carrier is transporting other property pursuant to an interstate shipping contract. As noted above, the Carmack Amendment was enacted to create a uniform national scheme for holding interstate carriers liable when the goods they agree to transport are lost or damaged or when a carrier otherwise fails to deliver the items in accordance with the parties' agreement. The statute carries out that scheme by stating that a carrier "shall issue a receipt or bill of lading *for property it receives for transportation* under this part" and then making carriers liable for "the actual loss or injury to the property." 49 U.S.C. § 14706(a)(1) (emphasis added). The statute further specifies that a "carrier's maximum liability for household goods that are lost, damaged, destroyed, or otherwise not delivered to the final destination is an amount equal to the replacement value of such goods, subject to a

---

that the result reached in *Raineri* "would not further the congressional intention 'to create a national uniform policy regarding the liability of carriers under a bill of lading *for goods lost or damaged in shipment*.'" *Gale*, 2013 WL 3776983, at *2 (quoting *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 706 (4th Cir. 1993)). The Court is similarly unpersuaded that *Raineri* reached the correct result on this issue.

20

maximum amount equal to the declared value of the shipment and to rules issued by the Surface Transportation Board and applicable tariffs." *Id.* § 14706(f)(2). The statute, in other words, regulates and limits a carrier's liability for the goods that it agrees to transport on behalf of a customer. Nothing in the text of the statute indicates an intent to preempt claims that carriers harmed non-transported property while performing a contract to transport other items. Among other things, the statute does not provide a mechanism for determining or limiting the carrier's liability when it is alleged to have harmed property that it never agreed to ship in the first place.

### iii. Defendants' Cases

In contrast to the on-point decisions addressed above, the preemption decisions on which Defendants rely are not on all fours with this case and do not persuade the Court that Judge Ivy's preemption analysis is incorrect.

As part of their second objection to the R&R, Defendants argue that Judge Ivy erred in failing to recognize instances in which the Sixth Circuit purportedly "squarely h[e]ld that Carmack preemption applies to *loss or damage to non-transported, collateral property* caused by the

21

carrier's interstate transportation services with respect to other goods under a bill of lading." (ECF No. 34, PageID.542 (emphasis added).) Defendants base this argument on *Marquette Cement Mfg. Co. v. Louisville & Nashville R.R. Co.*, 281 F. Supp. 944 (E.D. Tenn. 1969), *aff'd*, 406 F.2d 731 (6th Cir. 1969) and *Am. Synthetic Rubber Corp. v. Louisville & Nashville R.R. Co.*, 422 F.2d 462 (6th Cir. 1970). (*See* ECF No. 34, PageID.542–544.)

The Court disagrees with Defendants' characterization of *Marquette* and *American Synthetic Rubber*. These decisions address the extent to which the Carmack Amendment permits a plaintiff to recover special or consequential damages under interstate shipping contracts due to the alleged "mis-delivery" of goods. *American Synthetic Rubber* specifically addressed the question of whether a plaintiff could recover under the Carmack Amendment when the goods that were delivered were (due to a mistake of the carrier) not the goods that were covered by the parties' shipping contract. *See* 422 F.2d at 463–64. The court rejected the plaintiff's argument that the delivery of the wrong goods fell outside of the Carmack Amendment. *See id.* at 464–65. *Marquette* involved an alleged failure at the time of delivery to advise that the product that was

22

being delivered (cement) had already been "air entrained" and thus did not require further processing. *See* 281 F. Supp. at 946. There was no dispute that this claim arose under the Carmack Amendment, so the question was whether the plaintiff was limited to recovering the value of the cement or instead could recover the alleged cost of tearing out and replacing faulty concrete that incorporated the cement. *See id.* at 947. The court determined that the Carmack Amendment permitted the recovery of special and consequential damages to the extent permitted by common law. *See id.* at 950–51.

*American Synthetic Rubber* and *Marquette* do not support Defendants' argument that the Carmack Amendment applies to all claims for "loss or damage to non-transported, collateral property caused by the carrier's interstate transportation services with respect to other goods under a bill of lading." (*See* ECF No. 34, PageID.542.) Rather, these decisions at most confirm that a plaintiff may in some cases recover special or consequential damages for loss or damage to "non-transported, collateral property" when that loss or damage is a reasonably foreseeable outcome of "the breach of, or the negligent performance of, *a duty created by an interstate contract of carriage." Am. Synth. Rubber*, 422 F. 2d at 467

(emphasis added); *see also Marquette*, 281 F. Supp. at 947 (explaining that, in a case of improper delivery, "the only duty breached was the duty to deliver under a contract of carriage"). Defendants nowhere argue that the alleged theft here was a reasonably foreseeable outcome of the breach of any duty created by the bill of lading at issue here.[9] The bill of lading did not create a general obligation for Defendants to protect all of Plaintiffs' property against loss or damage regardless of whether the property was tendered to Defendants to be transported. Rather, as the R&R correctly concludes, the bill of lading governed the shipment of goods that Plaintiffs tendered to Defendants to be transported interstate. (*See* ECF No. 30, PageID.468–469.) These goods did not include the items that were allegedly stolen from Plaintiffs' driveway and personal vehicle.

In addition to raising arguments based on Sixth Circuit cases in their second objection, Defendants argue in their first objection that "several United States Courts of Appeals" have "rejected" what Defendants characterize as the R&R's "narrow preemption analysis based on defendants' alleged pre-move and move-related conduct." (ECF

---

[9] Defendants attached a copy of the bill of lading to their notice of removal. *See* ECF No. 1-4.

24

No. 34, PageID.535.) The Court disagrees with Defendants' reading of these out-of-circuit cases.

As a general matter, the decisions Defendants cite (*see id.* at PageID.535–538) confirm that a plaintiff cannot use creative pleading to avoid the Carmack Amendment when her claims concern a carrier's failure to deliver goods as promised. *Smith v. United Parcel Service*, 296 F.3d 1244 (11th Cir. 2002), for instance, addressed whether the Carmack Amendment preempted a family's state-law claims against UPS for fraud, negligence, wantonness, willfulness, and outrage based on UPS's alleged categorical refusal to deliver packages to their home. *See id.* at 1246. The Eleventh Circuit held that these claims were preempted because they "all arise from UPS's failure to deliver [the plaintiffs'] packages." *Id.* at 1249. The plaintiff in *Rini v. United Van Lines, Inc.*, 104 F.3d 502 (1st Cir. 1997) alleged that certain items that were loaded onto the moving van were never delivered to her new residence. *See id.* at 503. The First Circuit held that the Carmack Amendment preempted her attempts to hold the carrier liable for (i) the lost items and (ii) the carrier's alleged mishandling of her claim based on those lost items. *Id.* at 506. *Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377 (5th Cir.

25

1998) addressed "whether federal common law remedies are available in actions against common carriers within the scope of the Carmack Amendment." *Id.* at 380. The Fifth Circuit determined that the Carmack Amendment preempted the plaintiffs' claims for compensatory and punitive damages because those damages were "based directly on the loss of property shipped in interstate commerce by a common carrier under a bill of lading." *Id.* at 382–83. None of these decisions support Defendants' argument that the Carmack Amendment preempts claims based on the loss of items that the defendant did not agree to transport.

Many of the decisions cited by Defendants hold that the Carmack Amendment preempts claims that a carrier fraudulently induced a customer to enter a shipping contract by allegedly misrepresenting the nature or quality of the transportation services it would provide. *See, e.g.*, *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 288–90 (7th Cir. 1997); *Hayes v. Stevens Van Lines, Inc.*, No. 4:14-cv-982-O, 2015 WL 11023794, at *3 (N.D. Tex. Jan. 27, 2015); *Visram v. Darryl Flood Warehouse & Movers, Inc.*, No. Civ. A. H-05-0469, 2006 WL 305802, at *1–2 (S.D. Tex. Feb. 8, 2006); *Vitramax Grp., Inc. v. Roadway Express, Inc.*, No. Civ. A. 05-87-C, 2005 WL 1036180, at *1 (W.D. Ky. May 3, 2005); *Pietro Culotta*

26

*Grapes Ltd. v. S. Pac. Transp. Co.*, 917 F. Supp. 713, 715–16 (E.D. Cal. 1996); *United Van Lines v. Shooster*, 860 F. Supp. 826, 828–29 (S.D. Fla. 1992). (*See* ECF No. 34, PageID.535–538.) At first, these cases appear to lend some support to Defendants' preemption arguments given the facial similarity between these claims and Plaintiffs' allegations that Defendants misrepresented the nature and quality of the moving services they would provide. (*See* ECF No. 18, PageID.235–236, PageID.246.)

That facial similarity does not carry the day, however. All but one of the fraudulent-inducement decisions cited by Defendants involved claims that a carrier failed to satisfy its contractual obligations to deliver in satisfactory condition the goods *it had contracted to transport. See Gordon*, 130 F.3d at 284–85 (carrier never delivered items and instead threw them away); *Hayes*, 2015 WL 11023794, at *1 (household items were damaged despite a carrier allegedly promising to provide "'white glove delivery' service"); *Visram*, 2006 WL 305802, at *1 (items were damaged while in storage; carrier allegedly promised not to store items and instead promised to ship them directly); *Vitramax*, 2005 WL 1036180, at *2 (goods were damaged when they arrived at their destination); *Pietro Culotta Grapes*, 917 F. Supp. at 714 (defendants

27

failed to deliver shipments of grapes on time and grapes in the shipment were damaged). Because these claims were, at bottom, claims for loss of or damage to transported goods, they were subject to the Carmack Amendment's limits on liability regardless of how they were pleaded.

Defendants cite only one case in which a court held that the Carmack Amendment preempted a fraudulent inducement claim even though the shipment arrived undamaged and on time. *See United Van Lines, Inc. v. Shooster*, 860 F. Supp. 826 (S.D. Fla. 1992). In *Shooster*, a carrier filed suit against its customers after they refused to pay the full price the carrier charged for a move. *See id.* at 827. The dispute arose because the weight the carrier ultimately used to calculate the amount it charged for the move (24,000 pounds) was double the weight (12,000 pounds) used to calculate a pre-move cost estimate. *See id.* The customers asserted a counterclaim for fraudulent inducement based on the discrepancy between the weight used to generate the quote and the weight used to compute the final price. *See id.* at 828. One of the customers also alleged that an employee of the carrier committed assault and battery. *See id.* at 829. The court held that these claims were preempted by the Carmack Amendment based on its view of the statute

as "preempt[ing] virtually any state law claim." *Id.* at 828. The Court disagrees with and declines to follow *Shooster*'s virtually limitless view of the scope of Carmack preemption.

In sum, none of the decisions cited by Defendants persuade the Court that Judge Ivy erred in concluding that Plaintiffs' claims are not preempted by the Carmack Amendment.

### iv.    Other Federal Statutes and Regulations

Finally, Defendants contend that the R&R is "inconsistent with analogous Airline Deregulation Act (AAA) and FAAAA [i.e., Federal Aviation Administration Authorization Act of 1994] decisional precedents" to the extent it concludes that "negligent mover hiring is not preempted." (ECF No. 34, PageID.538.) This argument was not raised as part of Defendants' federal preemption arguments in their opposition to the motion to remand (ECF No. 20) and was therefore not properly presented to Judge Ivy for consideration.[10] The Court will not consider an

---

[10] Defendants indicate that they raised arguments regarding the FAAAA in their motion to dismiss and in response to Plaintiffs' fraudulent-joinder arguments. (*See* ECF No. 34, PageID.541.) That does not provide a sufficient basis for the Court to consider these arguments when assessing Defendants' objections to Judge Ivy's preemption analysis, particularly given that Judge Ivy did not consider any of the arguments raised in Defendants' motion to dismiss and instead recommended

argument in furtherance of an objection that was not presented to the magistrate judge in the first instance. *See Meddaugh v. Gateway Fin. Serv.*, 601 F. Supp. 3d 210, 213 (E.D. Mich. 2022).

In sum, Defendants do not demonstrate that Judge Ivy erred in recommending that the Court find that Plaintiffs' claims are not preempted by the Carmack Amendment and, therefore, that there is no basis to exercise jurisdiction over this matter under 28 U.S.C. § 1331. Accordingly, Defendants' first and second objections to the R&R are overruled.

### B. Objection Nos. 3, 4, & 5: Viability of Claims Against Corrigan for Purposes of Diversity Jurisdiction

Defendants' Notice of Removal asserts that 28 U.S.C. § 1332 (the federal diversity statute) provides an alternative basis for the Court to exercise jurisdiction. (*See* ECF No. 1, PageID.4–5.) There is no dispute that Plaintiffs and UVL are completely diverse or that the amount in controversy exceeds the jurisdictional threshold. Corrigan's Michigan citizenship is thus the only obstacle to exercising diversity jurisdiction in this case. Defendants maintain that Corrigan's citizenship should be

---

denying that motion without prejudice so it could be re-filed in state court. (*See* ECF No. 30, PageID.492.)

30

disregarded because, in their view, Corrigan's role as UVL's agent prevents it from facing liability in this case. (*See id.* at PageID.5.)

Judge Ivy concluded that Corrigan was properly joined to this case and, thus, its Michigan citizenship defeats Defendants' attempt to establish federal jurisdiction under 28 U.S.C. § 1332. The R&R first found the federal statute on which Defendants rely (49 U.S.C. § 13907(a)) inapplicable to the facts of this case. (*See* ECF No. 30, PageID.479–482.) The R&R then concludes that Plaintiffs assert a colorable negligence claim against Corrigan. (*See id.* at PageID.482–485.) Finally, the R&R concludes that Defendants have not established that Corrigan is exempt from liability under the MCPA. (*See id.* at PageID.485–490.) Defendants object (in some way) to each of these conclusions. (*See* ECF No. 34, PageID.546–558.) The Court will address each objection in turn.

### i.   Objection No. 3: Federal Statutory Bar to Liability

Defendants' third objection argues that Judge Ivy erred in finding that a federal statute (49 U.S.C. § 13907) did not protect Corrigan from facing liability in this case. Section 13907 states, in relevant part:

> Each motor carrier providing transportation of household goods shall be responsible for all acts or omissions of any of its agents which relate to the performance of household goods transportation services . . . and which are within the actual or

apparent authority of the agent from the carrier or which are ratified by the carrier.

49 U.S.C. § 13907(a). As the R&R observes, this statute has been interpreted in Carmack Amendment cases to preclude agents from facing liability for "damages related to the interstate transportation of household goods." (ECF No. 30, PageID.480–481.)

The R&R concluded that § 13907 did not shield Corrigan from liability because the items that were allegedly stolen from the grounds of Plaintiffs' former residence were "not subject to any . . . transportation services provided by Defendants since those items fell outside the scope of the Bill of Lading." (*Id.* at PageID.481.) Defendants object to this reasoning, noting that § 13907 nowhere conditions its applicability on whether property was subject to a bill of lading and instead applies to "all acts and omissions . . . which *relate to the performance* of household goods transportation services." (*See* ECF No. 34, PageID.548–550.)

The Court agrees that the allegations against Corrigan appear to fit within the conduct described in § 13907. The ICCTA defines "transportation" broadly to "include[] . . . services related to [the] movement [of property], including arranging for, . . . handling, [and] packing . . . ." 49 U.S.C. § 13102(23)(b). The allegations against Corrigan

32

"relate to" the performance of such services. Plaintiffs allege, among other things, that they "arranged for their residential move through Corrigan." (ECF No. 18, PageID.237, ¶ 10.) They also allege that "[b]ased upon Corrigan's representatives' actions and presence at the Plaintiffs' home, Corrigan was directly involved and made affirmative representations directly to Plaintiffs regarding the move." (*Id.* at PageID.237, ¶ 14.)

The Court will nevertheless overrule Defendants' third objection because it agrees with the R&R's conclusion that § 13907 does not bar Plaintiffs' claims against Corrigan, albeit for different reasons than those provided in the R&R. The Court finds § 13907 inapplicable because this federal statute has no bearing on whether Plaintiffs have stated a colorable state-law claim against Corrigan. "[T]o prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants *under state law*." *Chambers v. HSBC Bank USA, N.A.*, 796 F.3d 560, 564–65 (6th Cir. 2015) (emphasis added) (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)). "In federal diversity

33

actions, state law governs substantive issues and federal law governs procedural issues." *Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002).

Under this framework, the Court is not persuaded that § 13907—a federal statute—bars agents like Corrigan from being held liable for state-law claims. Section 13907 creates a substantive bar to liability and is not a mere procedural rule. *See Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945) (observing that a "federal court in a diversity case should follow State law" where the differences between federal and state law "intimately affect recovery or non-recovery"); *see also Poyner v. Lear Siegler, Inc.*, 542 F.2d 955, 958 (6th Cir. 1976) ("The question whether, in these circumstances, a corporation should be held liable for its corporate subsidiary's obligations . . . is clearly a substantive issue governed by Kentucky law."). Defendants point to no authority that suggests that § 13907 has been incorporated into Michigan law such that it could bar Corrigan from being held liable on Plaintiffs' state-law causes of action. Indeed, as the R&R observes when addressing Plaintiffs' negligence claim, Michigan law permits agents to be held liable for their own tortious conduct even when they are acting on behalf of a principal.

34

(*See* ECF No. 30, PageID.484 (citing *Magley v. M & W Inc.*, 926 N.W.2d 1, 5 (Mich. Ct. App. 2018)).)

Defendants cite only one decision in which a court held that § 13907 barred a state-law claim from proceeding against a carrier's agent. *See Rehm v. Balt. Storage Co.*, 300 F. Supp. 2d 408, 417 (W.D. Va. 2004) (cited at ECF No. 34, PageID.550; ECF No. 20, PageID.288–289). *Rehm* does not help Defendants. As an initial matter, it applied § 13907 in a meaningfully different posture: There was no dispute that the federal court had jurisdiction in *Rehm* because the plaintiff asserted federal Carmack-Amendment claims alongside state-law claims. *See id.* at 411. More importantly, the decision nowhere grapples with how a federal statute could shield an agent from liability with respect to a claim brought under state law. The Court therefore does not find *Rehm*'s analysis persuasive on the question of whether § 13907 establishes a basis to find that Corrigan was fraudulently joined.

In sum, Defendants do not demonstrate that Judge Ivy erred in recommending that the Court find 49 U.S.C. § 13907 inapplicable to the question of whether Corrigan was fraudulently joined. Accordingly, Defendants' third objection to the R&R is overruled.

35

ii.    Objection No. 5: Negligence Claim

Defendants' fifth objection (ECF No. 34, PageID.556–558) concerns Judge Ivy's conclusion that Plaintiffs assert a colorable negligence claim against Corrigan as a matter of Michigan law. (*See* ECF No. 30, PageID.482–485.) Defendants do not meaningfully engage with Judge Ivy's reasoning and instead repeat their arguments regarding why they believe the negligence claim is preempted by the Carmack Amendment. (*See* ECF No. 34, PageID.556–557.)

Defendants' fifth objection is overruled for the reasons the Court stated above with respect to Defendants' first and second objections, and also because it fails to identify any specific issues with Judge Ivy's analysis of the viability of Plaintiffs' negligence claim against Corrigan. *See Miller*, 50 F.3d at 380 (explaining that a party that objects to an R&R must point to specific errors). The Court agrees with and adopts the R&R's conclusion that "Defendants have not established that Plaintiffs cannot bring a colorable negligence claim against Corrigan." (*See* ECF No. 30, PageID.485.)

36

### iii.    Objection No. 4: MCPA Exemptions

Defendants' fourth objection (ECF No. 34, PageID.553–556) addresses Judge Ivy's conclusion that Defendants have not established that the MPCA exempts Corrigan from liability for purposes of their fraudulent-joinder argument. (*See* ECF No. 30, PageID.485–490.) Defendants rely on a provision that makes the MCPA inapplicable to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904(1)(a) (cited in ECF No. 30, PageID.485). Defendants contend that Corrigan is exempt from liability under the MCPA because it is regulated by both federal and state laws regarding motor carriage. (*See* ECF No. 34, PageID.553–554.)

The R&R cites cases in which this exemption was found to bar MCPA claims in certain cases. (*See* ECF No. 30, PageID.487–488.) It notes, however, the absence of case law that applied this exemption under similar factual circumstances or that involved a similar dispute regarding the nature of the "transaction or conduct" that underpinned an MCPA claim. (*See id.* at PageID.486–487.) Ultimately, the R&R concludes that Defendants fail to carry their burden of establishing that

37

Plaintiffs lack a colorable MCPA claim against Corrigan. (*See id.* at PageID.488.)

Defendants' fourth objection argues that the R&R got this issue wrong. They largely rely on cases that Judge Ivy already considered and found insufficiently on point. (*Compare* ECF No. 30, PageID.487–488, *with* ECF No. 34, PageID.554–555.) Defendants also cite an additional case (which they submitted with their briefing on their motion to dismiss) in which a Michigan state court concluded that a claim against a household goods motor carrier was preempted by the relevant provision of the MCPA (Mich. Comp. Laws § 445.904(1)(a)). (*See* ECF No. 34, PageID.555 (citing *Nicholls v. Morse Moving & Storage, Inc.*, No. 2022-192325-CZ, slip op. at 3 (Mich. Cir. Ct. June 23, 2022)); *see also* ECF No. 27-1, PageID.440 (relevant page of *Nicholls* decision).)

Ultimately, the Court need not (and will not) resolve whether Defendants are correct in maintaining that the exemption set forth in Mich. Comp. Laws § 445.904(1)(a) bars Plaintiffs' MCPA claim against Corrigan. Even if Corrigan were to be found exempt from liability for purposes of the MCPA, Plaintiffs have stated a colorable claim for common-law negligence against Corrigan in Count I of the Second

Amended Complaint. "[F]raudulent joinder does not apply where a plaintiff states *at least one colorable claim* against at least one non-diverse defendant." *Kanaga v. Monsanto Co.*, No. 1:25-cv-2786, 2026 WL 1705934, at *1 (N.D. Ohio June 12, 2026) (emphasis added); *see also Patterson v. Husqvarna Prof. Prods., Inc.*, No. 4:23-cv-71-RGJ, 2024 WL 102942, at *4 (W.D. Ky. Jan. 9, 2024) (declining to address additional claims when conducting a fraudulent-joinder analysis "[b]ecause there is *at least one colorable claim* against a non-diverse defendant" (emphasis added)); *Bridges v. Wacker-Chemie Achte Venture GmbH, Inc.*, No. 1:13-cv-306-CLC-SKL, 2014 WL 12843527, at *4 (E.D. Tenn. Apr. 22, 2024) (collecting cases that hold that a plaintiff "need only establish *one colorable claim* against one of the [non-diverse] defendants to prevail" in a dispute over purported fraudulent joinder (emphasis added)).

In sum, because the Court concludes that it is irrelevant to the fraudulent-joinder analysis whether Plaintiffs allege a colorable claim against Corrigan under the MCPA, the Court overrules Defendants' fourth objection and will adopt the R&R's conclusion that Defendants have not established that Corrigan was fraudulently joined.

## IV.    CONCLUSION

For the reasons set forth above:

1. Judge Ivy's Report and Recommendation (ECF No. 30) is ADOPTED except as noted above in the Court's discussion of Defendants' third and fourth objections to the R&R;

2. Defendants' objections to the R&R (ECF No. 34) are OVERRULED;

3. Plaintiffs' Motion for Remand and for Fees and Costs (ECF No. 13) is GRANTED to the extent Plaintiffs seek to have this case remanded to the Oakland County Circuit Court but DENIED with respect to Plaintiffs' request for fees and costs; and

4. Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 23) is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: June 30, 2026                          s/ Judith E. Levy
    Ann Arbor, Michigan                    JUDITH E. LEVY
                                        United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 30, 2026.

s/ Richard Thieme
RICHARD THIEME
Case Manager

41